**Not for Publication**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

THE CHARTER OAK FIRE INSURANCE
COMPANY,

     *Plaintiff*,

     v.

HATCH MOTT MACDONALD LLC, and
CERTAIN UNDERWRITERS AT LLOYD'S
LONDON SUBSCRIBING TO POLICY
NUMBER B080120388P14,

     *Defendant*.

Civil Action No. 20-5898

(JMV) (JBC)


**OPINION**

**John Michael Vazquez, U.S.D.J.**

Plaintiff, an insurance company, seeks declaratory relief in this matter, asserting that it did not have a duty to defend or indemnify its insured in prior litigation. Presently before the Court is Defendant Hatch Mott MacDonald LLC's ("HMM") motion to dismiss Plaintiff's First Amended Complaint for Declaratory Relief ("FAC"). The Court reviewed all submissions made in support of the motion[1] and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons that follow, Defendant's motion to dismiss is **DENIED**.

---

[1] Defendant's brief in support of its motion to dismiss will be referred to as "Def. Br.," D.E. 19-1. Plaintiff's opposition brief will be referred to as "Opp. Br.," D.E. 24. Defendant's reply brief will be referred to as "Reply," D.E. 26.

## I.     FACTS AND PROCEDURAL HISTORY[2]

Plaintiff Charter Oak, an insurance company, issued a commercial liability policy (the "Charter Oak Policy") to Defendant Hatch Mott MacDonald Group Inc. for the period of June 30, 2014 through June 30, 2015.  FAC  ¶¶ 1, 7.  Defendant Certain Underwriters at Lloyd's London Subscribing to Policy Number B080120388P14 ("Underwriters") "is a descriptive term used to refer to those participants subscribing to Policy Number B080120388P14 and is composed of a syndicate of individual underwriters that are organized under the laws of the United Kingdom and have their principal places of business in England."  *Id.* ¶ 2.  Underwriters issued a "professional liability insurance policy" (the "Lloyd's Policy") to HMM.  *Id.* ¶ 8.  The Lloyd's Policy was in effect from July 1, 2014 through June 30, 2015.  *Id.*  Included within the Lloyd's Policy was a self-insured retention ("SIR"), "pursuant to which HMM agreed to assume the responsibility for defense and indemnity in the amount of $500,000 per claim, subject to an aggregate limit."  *Id.*

Plaintiff alleges that, "[u]pon information and belief, Section II of the Lloyd's Policy affords 'Architects and Engineers Professional Liability' coverage to HMM."  *Id.* ¶ 9.[3]  The Lloyd's Policy provides that "[t]he Company will pay on behalf of the Insured those sums in excess of the Self-Insured Retention shown in Item 4 of the Declarations that the Insured shall become legally obligated to pay as Loss because of Claims made against an Insured to which this insurance

---

[2] The facts are derived from the FAC.  D.E. 18.  When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[3] The FAC indicates that a copy of the Lloyd's Policy is attached as Exhibit B, however, the FAC does not include exhibits.  *See* D.E. 18.  The originally filed Complaint did have exhibits, but Exhibit B was entitled "Port of Portland Temporary Service Provider Contract."  D.E. 1-2.  This does not appear to be the Lloyd's Policy nor do any of the remaining exhibits attached to the original Complaint.

applies." *Id.*  The Lloyd's Policy further indicates that it "applies only to claims arising out of

Breach of Professional Duty in the performance of Professional Services by the Insured or any

entity for whom the Insured is legally liability [sic];" and notes that the following conditions must

all be satisfied for the coverage to apply: "the Breach of Professional Duty forming the basis of

any Claim must arise out of Professional Services that take place subsequent to the Retroactive

Date specified in Item 8 of the Declarations and prior to the end of the Policy Period." *Id.*

The FAC provides additional excerpts from the Definitions section of the Lloyd's Policy.

First,

> Breach of Professional Duty means negligence, defined as the
> failure to meet the professional standard of care legally required or
> reasonably expected under the circumstances in the performance of
> non-performance of Professional services rendered to others by the
> Insured which results in Loss for which the Insured is legally liable.

*Id.* ¶ 10.  And second,

> Professional Services means those services that the Insured is
> qualified to perform for others in their capacity as an architect,
> engineer, . . . Construction Manager, program manager . . . or as
> specifically defined by endorsement to this policy and including the
> following:
>
>> 1.  the provision of advisory and consultancy services and
>> 2.  all other activities, including but not limited to site
>> activities, which the Insured may carry out as an incidental
>> or ancillary part of the business described in point 1 above,
>> and
>> 3.  those activities and duties undertaken by or under the
>> supervision of persons or personnel who are qualified or
>> technical personnel having not less than 5 years relevant
>> technical experience. Qualified persons or personnel shall be
>> deemed to mean those persons or personnel who have
>> attained an appropriate professional qualification from a
>> recognized body related to the particular activity they are
>> undertaking.
>
> and as otherwise declared to the Company.

*Id.*

3

This matter stems from an earlier action, *Sam McCarville vs. K & E Excavating, Inc. and Hatch Mott MacDonald, LLC*, Case No. 17CV07725, filed in or about February 2017 in the Circuit Court of the State of Oregon for the County of Multnomah (the "Underlying Action"). *Id.* ¶ 11. The plaintiff in the Underlying Action was electrocuted while working for a subcontractor, who was performing electrical work at a project located at Port International Airport. *Id.* ¶ 12. HMM had contracted with the Port of Portland to provide "project support and personal services to the Port's Engineering Construction Office." *Id.* ¶ 13. The complaint in the Underlying Action alleged that HMM "was hired by the Port of Portland to provide construction inspection and construction management including electrical inspection and management for the" project, and was negligent in "requiring or permitting workers to work in close proximity of energized high voltage circuits without de-energizing the circuits and grounding them," "failing to properly identify a live circuit," and "failing to stop work when an unidentified circuit was located until the safety of the circuit could be determined." *Id.* ¶ 15.

Charter Oak was notified of the Underlying Action by HMM's insurance representatives, Willis Group. *Id.* ¶ 14. In a June 19, 2015 email, Willis Group advised Charter Oak that "[t]he professional liability carriers has . . . been put on notice for this potential claim." *Id.* ¶ 14 (alteration in original). Charter Oak agreed to fund HMM's defense, subject to a reservation of rights to deny defense and indemnification as well as to seek reimbursement to the extent that the "Exclusion – Engineers, Architects or Surveyors Professional Liability" endorsement in the Charter Oak Policy barred coverage in the Underlying Action. *Id.* ¶ 16.

The "Exclusion – Engineers, Architects or Surveyors Professional Liability" endorsement adds the following as an exclusion of the policy's coverage for bodily injury and property damage liability:

> This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.
>
> Professional services include:
>
> 1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and
>
> 2. Supervisory, inspection, architectural or engineering activities.

*Id.* ¶ 17; D.E. 1-1 at 96.

In addition to reserving its rights, Charter Oak contemporaneously "sought the participation of the Defendants in the defense of HMM in the Underlying Action pursuant to their obligations under the Lloyd's Policy." *Id.* ¶ 18. "The Defendants – including HMM pursuant to its SIR obligations – were obligated under the terms of the Lloyd's Policy to defend and indemnify HMM in the Underlying Action; however, they refused to do so." *Id.* ¶ 19. Charter Oak alleges that it "repeatedly sought the Defendants' participation in the defense and settlement of the Underlying Action but the Defendants wrongfully refused to participate in HMM's defense or settlement of the Underlying Action." *Id.* ¶ 20.

On or about July 18, 2018, the parties involved in the Underlying Action engaged in mediation, but Underwriters "refused to attend the mediation and did not participate in or contribute to any settlement negotiations." *Id.* ¶ 22. HMM did not commit any funds to the settlement. *Id.* Charter Oak indicates that because Defendants "refused to honor or comply with their contractual obligations and duties to their insured," and "in light of the potential risks and substantial exposure to HMM in the Underlying Action," it contributed $500,000 toward the Underlying Action's settlement "on behalf of HMM for a full and final release of the claims against HMM." *Id.* ¶ 23.

Plaintiff filed a Complaint for Declaratory Relief on May 14, 2020, D.E. 1, and a FAC on November 19, 2020, D.E. 18. The FAC asserts five causes of action and seeks declarations that (1) Charter Oak had no duty to defend or indemnify HMM in the Underlying Action; (2) Defendants had a duty to indemnify HMM in the Underlying Action up to and including the respective policy limits of the Lloyd's Policy; and (3) Defendants are obligated to reimburse Charter Oak for all defense costs paid to defend HMM in the Underlying Action and the settlement paid by Charter Oak on behalf of HMM in the Underlying Action. Charter Oak seeks the following declarations in the alternative: (1) Defendants are obligated to reimburse Charter Oak for their equitable share of all defense costs paid to defend HMM in the Underlying Action and the settlement paid by Charter Oak on behalf of HMM in the Underlying Action; or (2) HMM is obligated to reimburse Charter Oak for all defense costs paid to defend HMM in the Underlying Action and the settlement paid by Charter Oak on behalf of HMM in the Underlying Action.

In response, Defendant HMM filed the present motion to dismiss, D.E. 19, which Plaintiff opposed, D.E. 24, and to which HMM replied, D.E. 26.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly*

*v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations."  *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).  If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim.  *DeFazio v. Leading Edge Recovery Sols., LLC*, No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

### III.   ANALYSIS

In an action based on diversity of citizenship,[4] a federal court generally applies the choice-of-law rules of the jurisdiction in which it sits.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Both parties appear to assume that New Jersey law governs this dispute.  *See*

---

[4] The Complaint alleges that this Court has jurisdiction "pursuant to 28 U.S.C. § 1332 and under the Declaratory Judgment Act, 28 U.S.C. § 2201, as the citizenship of the parties is diverse and the amount in controversy is in excess of $75,000."  FAC ¶ 5.  "The Declaratory Judgment Act does not, however, provide an independent basis for subject-matter jurisdiction; it merely defines a remedy."  *Allen v. Debello*, 861 F.3d 433, 444 (3d Cir. 2017).  Thus, diversity jurisdiction under 28 U.S.C. § 1332 is the only alleged basis by which this Court can exercise subject-matter jurisdiction.  The case caption indicates that HMM is a limited liability company, but the FAC alleges that HMM is "a corporation organized and existing under the laws of the State of Delaware" with its principal place of business in New Jersey.  FAC ¶ 4.  HMM has not challenged this allegation concerning its status as a corporation.  Nevertheless, given the conflicting information as to HMM's corporate status, the Court will require Plaintiff to establish that the Court has subject-matter jurisdiction.

Def. Br. at 6; *see* Opp. Br. at 4.  Seeing no clear reason to deviate from the parties' assumptions, the Court will apply New Jersey law.  *See Manley Toys, Ltd. v. Toys "R" Us, Inc.*, No. 12-3072, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the . . . claims as though New Jersey substantive law applies, the Court will assume that to be the case." (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999))).

At the outset, the Court notes that HMM's motion to dismiss does not attack the plausibility of Plaintiff's causes of action.  Instead, HMM argues that Plaintiff will ultimately be unable to recover from HMM under New Jersey law.[5]  HMM's first argument in support of dismissal  is that New Jersey courts do not permit an insurance company to seek contribution from its own insured's SIR pursuant to an "other insurance clause."  Plaintiff responds that it does not assert a right of recovery against HMM pursuant to the existence of "other insurance."  Opp. Br. at 8.  Rather, Plaintiff seeks to recover against HMM because it alleges that the Charter Oak Policy did not provide coverage for the claims asserted against HMM in the Underlying Action.  *Id.*  The FAC supports this assertion, alleging that "the Charter Oak Policy provides no coverage for the damages sought in the Underlying Action" and "Charter Oak had no obligation to defend or indemnify HMM with respect thereto."  FAC ¶ 24.  Absent from the FAC is an allegation that Plaintiff seeks recovery pursuant to an "other insurance" clause.  As a result, the Court denies HMM's motion on this ground.

HMM next argues that Plaintiff cannot pursue subrogation claims against its own policyholder, HMM.  Def. Br. at 8.  In response, Plaintiff asserts that the FAC does not assert a subrogation claim against HMM and, therefore, the anti-subrogation rule does not preclude

---

[5] HMM's motion reads more like a motion for summary judgment than a motion to dismiss.  Although HMM takes a position contrary to Plaintiff's claims, at this stage of the litigation, the Court must accept Plaintiff's well-pleaded allegations as true.

Plaintiff's theory of recovery against HMM.  Opp. Br. at 9.  As noted above, the FAC indicates that the basis on which Plaintiff seeks to recover is its lack of an obligation to defend or indemnify HMM.  As a result, the Court also denies HMM's motion on this basis.

**IV.      CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss is **DENIED**.   An appropriate Order accompanies this Opinion.

Dated:          August 23, 2021

_____
John Michael Vazquez, U.S.D.J.